IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Jimmy A. Haynes, | ) | C.A. No. 7:16-1922-HMH-KFM |
| | ) | |
| Plaintiff, | ) | **OPINION & ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Waste Connections, Inc., and Waste | ) | |
| Connections of South Carolina, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Jimmy A. Haynes ("Haynes"), proceeding pro se, alleges race discrimination and retaliation claims against his former employer, Waste Connections of South Carolina, Inc. ("Waste Connections"), and its parent entity, Waste Connections, Inc. ("WCI"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e), et seq., and 42 U.S.C. § 1981. Waste Connections and WCI filed a motion for summary judgment on March 15, 2017. (Mot. Summ. J., ECF No. 59.) Magistrate Judge McDonald recommends granting the Defendants' motion for summary judgment. (R&R, ECF No. 109.) After review, the court adopts the

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1) (2006).

1

magistrate judge's Report and Recommendation and grants the Defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Haynes, an African American male, was hired by James Fountain ("Fountain"), a white male, at Allied Waste in 2006. (Mot. Summ. J. Attach. 3 (Fountain Aff. ¶ 7), ECF No. 59-3.) Waste Connections acquired Allied Waste in 2009, and Haynes began his employment with Waste Connections on April 19, 2009. (Id. Attach. 3 (Fountain Aff. ¶ 7), ECF No. 59-3); (Compl. ¶ 2, ECF No. 1.) Haynes claims to be employed by both WCI and Waste Connections, while the Defendants argue that he was only an employee of Waste Connections. (R&R 2, ECF No. 109.) In support, Haynes submitted documentation, including an offer of employment by WCI, an Employee Handbook Receipt stating that Haynes' employment with WCI was at-will, and payroll forms for WCI. (Resp. Opp'n Mot. Summ. J. Attach. 2 (Ex. 25), ECF No. 89-2.)

Haynes was a driver for the Defendants and was responsible for operating a large, multi-ton "front-end loader" trash truck in Duncan, South Carolina, and for picking up trash from customer locations for the Defendants. (Mot. Summ. J. Attach. 3 (Fountain Aff. ¶ 9), ECF No. 59-3.) According to Fountain, on June 22, 2015, Haynes was involved in an incident while refueling his truck. (Id. Attach. 3 (Fountain Aff. ¶ 14), ECF No. 59-3.) Fountain submits Haynes drove away from a fuel pump with the gas nozzle still in his truck and ripped away the hose. (Id. Attach. 3 (Fountain Aff. ¶ 14), ECF No. 59-3.) In addition, on August 11, 2015, Haynes was involved in a single vehicle accident in which he drove his truck off a highway and down a slope. (Id. Attach. 2 (Pl.'s Dep. 42-43), ECF No. 59-2.) Fountain and Mark Ceresa ("Ceresa"), the district manager, issued Haynes a written warning for "poor performance" as a

result of these two incidents. (Id. Attach. 3 (Fountain Aff. ¶¶ 15-17; Ex. A (Employee Meeting Notice)), ECF No. 59-3.) Haynes alleges that he was not responsible for the gas hose incident and that inclement weather caused the accident. (Objs. 7-8, ECF No. 119.) Haynes refused to sign the written warning. (Mot. Summ. J. Attach. 3 (Fountain Aff. ¶¶ 16-17; Ex. A (Employee Meeting Notice)), ECF No. 59-3.)

On August 25, 2015, the truck's camera recorded Haynes with one hand on the steering wheel and the other hand touching his cell phone. (Id. Attach. 2 (Pl.'s Dep. 53-54), ECF No. 59-2.) Haynes received a second written warning and received a one-day suspension for the cell phone incident. (Id. Attach. 7 (Employee Meeting Notice), ECF No. 59-7.) Fountain alleges the cell phone incident violated the Wireless Communication Device Usage Policy. (Id. Attach. 3 (Fountain Aff. ¶ 19), ECF No. 59-3.) Haynes argues he was checking the time at a red light and that he was told that he could use his phone when the truck was stopped. (Id. Attach. 2 (Pl.'s Dep. 56-58), ECF No. 59-2.) On September 25, 2015, Haynes testified that he discussed his annual performance review with Fountain and Fountain told him that "everything looks good" and there was "nothing to worry about." (Resp. Opp'n Mot. Summ. J. Attach. 1 (Ex. 1 (Haynes Aff. ¶¶ 3E-F)), ECF No. 89-1.)

On October 7, 2015, Haynes reported to work two hours early because he wanted to leave early to have lunch with his wife and play basketball. (Mot. Summ. J. Attach. 2 (Pl.'s Dep. 76-77), ECF No. 59-2.) Haynes' wife testified that Haynes was ill with a stomach virus on October 6-7, 2015. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Ex. 2 (K. Haynes Aff. ¶¶ 5-8)), ECF No. 89-1.) In addition, Haynes' wife testified that the illness kept Haynes from having lunch with her and playing basketball. (Id. Attach. 1 (Ex. 2 (K. Haynes Aff. ¶¶ 9-10)), ECF No. 89-1.)

3

When Haynes arrived at work, he was informed that his regular truck was being repaired and that a replacement truck would be ready in five minutes. (Mot. Summ. J. Attach. 2 (Pl.'s Dep. 70-71, 73), ECF No. 59-2.) Haynes responded, "I'm going home; I'm leaving." (Id. Attach. 2 (Pl.'s Dep. 73), ECF No. 59-2.) Haynes sent a text message to Fountain stating that he was ill and would not be working that day. (Id. Attach. 3 (Ex. E (Picture Copy of Text Message)), ECF No. 59-3.) As a result of Haynes' absence, Fountain had to quickly find someone to cover Haynes' shift and approximately one-fourth of the customers on Haynes' assigned route did not receive trash service that day. (Id. Attach. 3 (Fountain Aff. ¶ 24), ECF No. 59-3.)

The next morning, Fountain spoke with the company mechanics about the October 7 incident. (Mot. Summ. J. Attach. 3 (Fountain Aff. ¶ 27), ECF No. 59-3.) The mechanics stated that Haynes appeared frustrated that his regular truck was being repaired and said "forget this" or "f*** this" and left. (Id. Attach. 3 (Fountain Aff. ¶ 27), ECF No. 59-3.) Further, Fountain and Ceresa contacted John Morgan ("Morgan"), the human resources manager, to discuss the October 7 incident. (Id. Attach. 3 (Fountain Aff. ¶ 28), ECF No. 59-3.) According to Fountain, Fountain, Ceresa, and Morgan discussed the October 7 incident, along with Haynes' other recent incidents, and decided to terminate Haynes' employment. (Id. Attach. 3 (Fountain Aff. ¶ 29), ECF No. 59-3.) On October 8, 2015, Fountain and Ceresa met with Haynes and informed him that his employment was terminated for job abandonment. (Id. Attach. 3 (Fountain Aff. ¶ 30), ECF No. 59-3.)

In support of Haynes' race discrimination claim, he alleges that his relationship with Fountain was sometimes "contentious." (Compl. ¶ 17, ECF No. 1.) During his deposition, Haynes testified that Fountain denied his request for a day off when Haynes' wife had a

4

miscarriage around 2009. (Mot. Summ. J. Attach. 2 (Pl.'s Dep. 92), ECF No. 59-2.) In addition, Haynes testified that Fountain had made racially derogatory or offensive statements when he told Haynes that he was not one of his "chosen" or "favorites" between 20,000 and 50,000 times. (Id. Attach. 2 (Pl.'s Dep. 10-11), ECF No. 59-2.)

## II. Report and Recommendation

First, Magistrate Judge McDonald recommends granting the Defendants' motion for summary judgment on the Title VII and § 1981 disparate treatment claim, because Haynes failed to establish the essential elements of a prima facie case of disparate treatment that similarly situated employees outside the protected class received more favorable treatment than him or his termination from employment occurred under circumstances giving rise to an inference of unlawful discrimination. (R&R 9-15, ECF No. 109.) Additionally, the magistrate judge recommends granting summary judgment finding that even if Haynes could show a prima facie case of disparate treatment based on race, the Defendants have set forth a legitimate, nondiscriminatory reason for his termination. (Id. at 15, ECF No. 109.) Second, Magistrate Judge McDonald recommends granting the Defendants' motion for summary judgment on the Title VII retaliation claim, because Haynes failed to provide sufficient evidence to establish that he engaged in a protected activity or any causal connection between the protected activity and Defendants' actions, both of which are required elements for a Title VII retaliation claim. (Id. at 19-20, ECF No. 109.)

### III. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Objections to the Report and Recommendation

Haynes filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is

accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that many of Haynes' objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, the court was able to glean two specific objections. Haynes objects to the magistrate judge's finding that Haynes failed to establish a prima facie case of race discrimination because Joseph Hicks ("Hicks"), a former coworker, was not a similarly situated employee and that Defendants have demonstrated a nondiscriminatory reason for terminating Haynes.

To establish a prima facie case of disparate treatment, a plaintiff must show: (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently from similarly situated employees outside the protected class. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010). After establishing a prima facie case, the burden then shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for the actions against the plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). If Defendants demonstrate a legitimate, nondiscriminatory reason for its decision, Haynes must then show that Defendants' stated reason is mere pretext for unlawful discrimination. Id. "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against [him]." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Under the fourth element of the prima facie case, Haynes objects to the magistrate judge's finding that Hicks was not a valid comparator because they were not similarly situated. Haynes alleges that Hicks was a valid comparator. (Objs. 3, ECF No. 119.) Valid comparators are individuals who "are similar in all relevant respects." Haywood v. Locke, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) (unpublished). Specifically, to show that Hicks is a valid comparator, Haynes must show that they both "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577 (6th Cir. 1992)).

Haynes has failed to establish that Hicks is a similarly situated employee. The evidence before the court does not indicate that Hicks engaged in the same conduct under the same circumstances as Haynes. Haynes contends that Hicks' infractions during 2013 were comparable to Haynes' infractions, and that Hicks was treated differently. (Objs. 3-8, ECF No. 119.) First, Haynes identifies four incidents involving Hicks in support: Hicks using a cell phone while driving on February 4, 2013; Hicks becoming distracted while driving on February 14, 2013; Hicks being late in responding to a traffic incident on May 20, 2013; and Hicks using a cell phone while driving on June 25, 2013. (Objs. 7-8, ECF No. 119.) However, unlike Haynes' gas hose incident and single vehicle accident, all of Hicks' reported incidents did not cause a collision or any other damage. (Resp. Opp'n Mot. Summ. J. Attach. 2 (Ex. 30 (Employee Meeting Notices), ECF No. 89-2.) Second, Haynes identifies an incident on April 18, 2013, when Hicks notified his employer that he was resigning from his job prior to leaving the premises. (Id. (Ex. 30 (Employee Meeting Notices)), ECF No. 89-2.) In contrast,

Haynes left the premises and abandoned his job without speaking with management. Hicks' previous work incidents did not reach the same level of seriousness as Haynes' incidents. (R&R 11-12, ECF No. 109.)

Lastly, Haynes produced Facebook messages to allege another driving incident by Hicks. (Resp. Opp'n Mot. Summ. J. Attach. 2 (Ex. 31 (Facebook Messages)), ECF No. 89-2.) However, the Facebook messages are inadmissible hearsay evidence. Fed. R. Evid. 801; see Maryland Hwys. Contractors Ass'n Inc., 933 F.2d 1246, 1251-52 (4th Cir. 1991) ("Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.") In addition, Haynes has provided no evidence to suggest management was aware of the incident discussed on Facebook. See Duggan v. Sisters of Charity Providence Hosp., 663 F. Supp. 2d 456, 463 (D.S.C. 2009) ("And 'unless [the decisionmakers] knew of the [comparators' misconduct] the events cannot be considered in determining whether [plaintiff and his comparators] are similarly situated.'") (quoting Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1317 n.5 (11th Cir. 2003)). Based on the foregoing, Haynes has failed to establish that Hicks is a valid comparator.

Further, Haynes attempts to discount the magistrate judge's Report and Recommendation by arguing that additional discovery was not made available to him. (Objs. 15, ECF No. 119.) However, this argument is without merit. Haynes' motion to compel was granted in part and denied in part on March 29, 2017. (Mot. Compel, ECF No. 66.) Haynes' second motion to compel was denied on June 5, 2017, because the magistrate judge found that Waste Connections had adequately responded to the previous motion to compel and

had provided all responsive documents pursuant to the first motion to compel. (Second Mot. Compel, ECF No. 88.)

In addition, Haynes objects that the Defendants have failed to set forth a legitimate, nondiscriminatory reason for his termination. Even if Haynes could show a prima facie case of disparate treatment based upon race, the Defendants have set forth a legitimate, nondiscriminatory reason for his termination. As summarized previously, after several serious performance issues, Haynes left the premises without prior notice to management. (R&R 15, ECF No. 109.) Therefore, after a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge McDonald's Report and Recommendation.

Therefore, it is

**ORDERED** that the Defendants' motion for summary judgment, docket number 59, is granted. It is further

**ORDERED** that all pending nondispositive motions are dismissed as moot.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
October 13, 2017

### NOTICE OF RIGHT TO APPEAL

The Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.